THE LACLEDE POWER COMPANY OF ST. LOUIS, Appellant, v. ROBERT T. STILLWELL, Assignee of the ZENAS VARNEY CARRIAGE COMPANY, Respondent.

### St. Louis Court of Appeals, December 9, 1902.

1. **Contract, Construction of: RULE.** A contract should be so construed in full scope and purpose as not to give an unfair advantage to either party to the contract.

2. ———: ———: ———: **ASSIGNMENT FOR BENEFIT OF CREDITORS.** In the case at bar, the defendant by making an assignment and dispossessing itself of all its assets rendered itself unable to comply with the contract and thereby committed a breach of it.

3. ———: ———: ———: **UNLIQUIDATED DAMAGES: ASSIGNED ESTATE: PRACTICE AND PLEADING.** Unliquidated damages, for breach of contract made by an assignor to a deed of voluntary assignment for the benefit of creditors, may be proved up against the assigned estate.

Appeal from St. Louis City Circuit Court.—*Hon. Selden P. Spencer,* Judge.

REVERSED AND REMANDED.

*C. R. Skinker* for appellant.

(1) By the terms of the contract of August 19, 1898, the carriage company is obliged to take power from plaintiff until August 19, 1903. Springfield Seed Co. v. Walt, 67 S. W. 938; Missouri Edison Co. v. Bry, 88 Mo. App. 135; Missouri Edison Co. v. Steinberg Co., 68 S. W. 383. (2) The obligation of the clause of the contract binding the carriage company to take power from plaintiff for five years is absolute, and also independent of the clause binding the carriage company to take its "entire requirements for power supply" from plaintiff. The latter is a covenant enlarging the obligation of defendant, not lessening it. Upon well-

settled principles of construction the contract in this case should be construed so as to bind the carriage company to take power from plaintiff for five years from its date. Haarstick v. Shields, 11 Mo. App. 602; McManus v. Shoe Co., 60 Mo. App. 218; Lieweke v. Jordan, 59 Mo. App. 624; Beach on Contracts, sections 708, 717, 718, and cases cited; Chitty on Contracts (4 Am. Ed.), 67. (3) The carriage company impliedly bound itself not to disable itself from performing the contract for the whole term of five years, by a voluntary assignment and withdrawal from business. St. Louis, etc. Co. v. Tierney, 5 Col. 582.

*Louis A. Steber* for respondent.

(1) The appellant's claim for power to be furnished in future is not sustainable out of the trust estate. Weinman & Co.'s Estate, 164 Pa. St. 405; 3 Am. and Eng. Ency. of Law (2 Ed.), pp. 138, 139, and notes. (2) Unliquidated damages are not provable against an assigned estate. In re Adams, 67 How. Pr. (N. Y.) 284.

BLAND, P. J.—On August 19, 1898, the Zenas Varney Carriage Company, a corporation, made the following contract with the appellant corporation, to-wit:

"St. Louis, Mo., Aug. 19, 1898.
"To the Laclede Power Co. of St. Louis,
   Room 808 Bank of Commerce Building:
"You are hereby ordered to connect your underground electric power service to building No. 2017 Morgan street, ready for connection to inside wiring, for which we agree to pay you a service charge of $——; and it is agreed to take from you a capacity of seven and one-half electric horsepower. Should a greater power capacity be taken from your lines at any time, an additional price will be paid therefor as hereinafter provided.
"It is agreed to take from you our entire require-

ments for power supply for the term or terms of five years and under the conditions hereinafter specified.

"Regular bills will be rendered on the first day of each month and are payable at the company's office on or before the fifth day of same month. Bills remaining unpaid after the fifth inst., are subject to an addition of five per cent, and in the event all bills due the company from the applicant or applicants hereto are not paid by the fifteenth inst., the supply of power may be shut off by the company until the bills are paid, without thereby vitiating this contract.

"Authorized agents of the company shall have access to the premises at all reasonable times for the purpose of examining motors, meters and wires, or for the purpose of disconnecting the wires for non-payment of bills when due, or for the removal of its property.

"This contract shall be in force from and after date, and shall continue for periods of five years until either party shall at the expiration of any period of five years give written notice of its desire to discontinue this arrangement. The electric current furnished is to be used for power purposes only, and is to be charged for at said company's prevailing rates.

"This contract does not contemplate the supply of power for lighting, and the power supplied under this contract shall not be used for such purposes without the written consent of the company.

"Minimum charges per month under this contract are at the rate of two dollars net per horsepower, and are based upon the maximum power capacity required or used at any time, but in no case shall the total payments during each year of the period or periods of this contract be less than $180, excepting that a proportionate allowance shall be made for such time as may elapse between date hereof and the date of first service connection to building or tender of service connection.

"Meters are to be furnished at the option of the consumer or the company, in which case a deposit will be made by the undersigned with the company to cover their cost.

"If at any time the Laclede Power Company shall be compelled, by act of God, by governmental authority, national, state or municipal, or by other cause, to discontinue, in whole or in part, the operation of its lines for the supply of power, then it shall not be liable for any failure to supply power thereby incurred; but in all cases the said company shall use its best efforts to resume the operation of its lines.

"Rate $15 net per month to cover use of power to operate freight elevator not more than fifty-two hours per month.

"J. Varney Carriage Co.,
"Fred Dopp, Prest.

"Accepted for the Laclede Power Company of St. Louis.

"By William Fay."

Pursuant to the contract, appellant furnished to the carriage company electric power in varying amounts until January 7, 1899, for which the carriage company made monthly payments. On January 27, 1899, the carriage company made a voluntary assignment of its effects to respondent, R. T. Stillwell, for the benefit of its creditors. Stillwell qualified and took possession of the assets of the assignor.

After the assignment the carriage company failed to take or pay for any of the electric power of appellant.

On April 15, 1899, the appellant presented to the assignee a claim for $795 damages on account of the alleged breach by the carriage company on its contract with appellant for electric power and asked that it be allowed against the estate. The assignee rejected the claim and appellant appealed to the circuit court where, on a hearing anew, the appellant was forced to take a nonsuit. A motion to set aside the nonsuit and for new trial proving of no avail, the cause was appealed to this court.

The petition for the allowance of the claim presented to the assignee alleged, as a breach of the con-

tract, that appellant "had at all times been, and now is, ready, willing and able to continue to furnish power to the carriage company; that the assignee has refused to take the power according to the terms of the contract and that the carriage company is insolvent and has transferred its property to the assignee for the benefit of creditors."

The questions presented for solution by the record are, first, whether the carriage company bound itself to take the power during the life of the contract, or was it only bound to take the power when and at such times during the contract period as it might require; second, if the carriage company was bound to take the power during the entire period of five years, are the damages due to the breach of the contract by the carriage company making its assignment for the benefit of its creditors, provable against the assigned estate? On the strength of the following paragraph of the contract, to-wit: "It is agreed to take from you our entire requirements for power supply for the term or terms of years and under the conditions hereinafter specified," it is contended by respondent, and was so ruled by the circuit court, that the carriage company was at liberty to take or refuse to take electric power from appellant at any time, provided it did not take electric power or other power from some other concern. If this paragraph stood alone and did not refer to other conditions of the contract, and if it was in no way controlled by other provisions of the contract, and if the situation of the parties was such as to lend countenance to a literal interpretation of it, then we think the contract might fairly be construed to bind the carriage company to take the power at such time as it might require and that it was at liberty at any time during the life of the contract to discontinue the taking of the power if it did not require the use of it. But the further conditions to which the paragraph is made subject are such as to refute the argument that the carriage company was only bound to take power when and as it required.

The further conditions of the contract, and to which reference is made and to which the paragraph is subject, provide that the contract shall continue for periods of five years until either party shall, at the expiration of any period of five years, give written notice of its desire to discontinue the arrangement.

It is also provided that in no case shall the total payment during each year of the period or periods of the contract be less than $180, and provides also a rate of $15 net per month to cover use of power to operate a freight elevator, to be paid on or before the fifth day of each month. According to these provisions the carriage company was bound to pay, on or before the fifth day of each succeeding month, $15 for power agreed to be used in the preceding month, whether it required it to operate its freight elevator or not, and was bound to pay for each year during the life of the contract a sum not less than $180 for the use of appellant's power whether it used the power or not. These provisions are wholly inconsistent with the idea that the carriage company was at liberty to discontinue payment for the use of the power, if for any reason it did not require the use of it in the operation of its freight elevator. That the parties had in contemplation the probability that the carriage company would in the future require power for other purposes than the operation of its elevator, is evident from the tenor and effect of the contract when considered as a whole. To provide for this probable requirement the appellant agreed to furnish such power at two dollars net per month per horse power, and the carriage company agreed to take such power at said rate whenever it should require it, and it is this additional power to which the paragraph quoted has reference and it was this prospective requirement of additional power the parties had in mind that gave birth to that clause.

The consideration which moved the appellant to connect its underground electric service with the premises of the carriage company was, that for five years at least the carriage company would take of it

sufficient power to operate its freight elevator and pay therefor $15 per month, and that if the carriage company should, at any time during the life of the contract, require additional power for other purposes, it would take it of appellant and pay therefor at the rate of two dollars per month per horsepower. To give any other construction to the contract would be to lose sight of its full scope and purpose and give an unfair advantage to the carriage company. The latter should not be done if there is room to give it some other construction fair to both companies. McManus v. Shoe & Clothing Co., 60 Mo. App. (St. L.) 216; Missouri-Edison Co. v. Steinberg Hat & Fur Co., 94 Mo. App. 543; St. Louis, etc., v. Tierney, 5 Colo. 582; Beach on Contracts, sec. 708. By making the assignment and dispossessing itself of all its assets, the carriage company rendered itself unable to comply with the contract and thereby committed a breach of it. Moore v. Thompson, 93 Mo. App. (St. L.) 336; Hoyle v. Scudder, 32 Mo. App. (St. L.) 372; In re Reading Iron Works, 150 Pa. St. 369; Potts v. Rose Valley Mills, 167 Pa. St. 310; Kalkhoff v. Nelson, 60 Minn. 284; Lovell v. St. Louis Mut. Ins. Co., 111 U. S. 272.

The claim as presented was not for monthly payments for electric power, as respondent's counsel seems to have assumed in his argument and brief, but for damages for a breach of the contract. Can such damages be proven up against the assigned estate? Following Hoyle v. Scudder, supra, in Moore v. Thompson, supra, we held that unliquidated damages, for a breach of a contract made by an assignor to a deed of voluntary assignment for the benefit of creditors, might be proved up against the assigned estate. This view is supported by the Reading Iron Works' case, Potts v. Rose Valley Mills, Kalkhoff v. Nelson, and Lovell v. St. Louis Mut. Ins. Co., supra, and we are not persuaded that the Hoyle and Moore cases should be departed from. There was a clear breach of the contract by the carriage company and appellant is entitled to recover substantial damages if he can prove

them; if not, he is entitled to at least nominal damages. Dulaney v. The St. Louis Sug. Ref. Co., 42 Mo. App. (St. L.) 659; Weber v. Squier, 51 Mo. App. (St. L.) 601; Brevard v. Wimberly, 89 Mo. App. (St. L.) 331.

The judgment is reversed and the cause remanded. *Goode, J.,* concurs; *Barclay, J.,* not sitting.