## THE AMERICAN HARDWOOD LUMBER COMPANY, Appellant, v. R. K. DENT, Respondent.

**Springfield Court of Appeals, December 5, 1910.**

1. **CONTRACTS: Construction: Order for Lumber.** In a suit for damages for the breach of a contract in the form of an accepted order for lumber, which was to be sawed from timber then standing, the defense was made that the contract was so indefinite that it could not be complied with; that there was nothing to show the quantity of each variety to be shipped. The contract is examined and construed, and *held*, not subject to this objection; that the minimum amount of lumber to be furnished was specified and the selection of the amount and variety of each kind was left to the defendant, and that the contract could have been complied with had the defendant so desired.

2. ————: ————: When the terms of a contract are clearly expressed, there is no room for construction and the contract must stand or fall as it is written.

3. ————: ————: **Words Given Usual Meaning.** In determining what a contract means, the words used in it are to be given their usual and ordinary meaning, subject to this limitation, the court will in cases of doubt, give the construction to the language used which will uphold the contract.

4. ————: ————: **Fair to Both Parties.** The courts will endeavor to give the contract that construction most equitable to the parties, and which will not give one party an unfair and unreasonable advantage over the other,

5. ————: ————: **Intention: Condition and Surroundings.** The ultimate object of the courts in construing contracts is to ascertain the intention of the parties, and when there is room for construction at all, the court may consider in connection with the contract, the conditions and surroundings of the parties, and the object that they had in view, and these matters, if not expressed in the contract, may be shown by parol evidence.

6. **EVIDENCE: Contracts: Parol Testimony to Vary Written Contract.** In a suit for damages for breach of a contract for the purchase of lumber to be cut from timber then standing, the contract is construed as giving the vendor the right to select the quantity of the varieties ordered, and *held*, that parol testimony to show what per cent of each variety the parties understood was to be furnished was not admissible, for such testimony would vary the terms of the written contract.

7. DAMAGES: Contracts: Breach of Contract to Furnish Lumber:
Basis for Measuring Damages. In a suit for damages for
breach of a contract to furnish lumber, the contract is construed
as giving defendant the right to furnish a definite minimum
amount and to select the quantity of the kind specified in the
order. *Held*, that the damages should be computed on the min-
imum amount and on the kind of lumber the furnishing of which
would result in the least damage to the defendant.

Appeal from St. Louis Circuit Court.—*Hon. Robert M. Foster*, Judge.

REVERSED AND REMANDED.

*Julius T. Muench* for appellant.

*Pearce, Davis & Curlee* for respondent.

COX, J.—Action for damages for breach of con-
tract. The plaintiff at the trial had the contract iden-
tified, then offered it in evidence, but upon defendant's
objection, the court excluded it; plaintiff then took a
nonsuit with leave to move to set the same aside, and
upon the court's refusal to do so, has appealed. The
contract referred to was as follows:

"ST. LOUIS, MISSOURI, Aug. 21, 1902.
"Dent-Deming Lumber Co., Newton, Mississippi.
"Gentlemen: You may enter our order for the
following hard woods, to be gotten out between now
and January 1, 1903.
*Prices.*

| | | |
|---|---|---|
| 1st and 2d quartered white oak | $40.00 per. M. ft. | |
| Common          Do. .......... | 20.00 | Do. |
| 2½, 3 and 4 in. Plain White Oak | | |
| 1st and 2d. .............. | 21.00 | Do. |
| Do.       Common Do. ........ | 11.00 | Do. |
| 1 in.  1st and 2d Poplar ...... | 23.00 | Do. |
| 1¼ in.  Do. .................. | 24.00 | Do. |

| | | |
|---|---|---|
| 1½ and 2 in.  Do. ............ | 25.00 | Do. |
| 1 in.  Common Poplar ........ | 13.00 | Do. |
| 1¼ in.  Do. ............... | 14.00 | Do. |
| 1½ and 2 in.  Common Poplar | 15.00 | Do. |
| 1st and 2d Ash ............. | 25.00 | Do. |
| Common Ash ............... | 15.00 | Do. |
| 1st and 2d quartered Red Oak | 30.00 | Do. |
| Common        Do. ........... | 18.00 | Do. |

"Plain Red Oak $2 per M less than plain white oak.  One in. plain white oak same price as plain red oak.  Shipping culls one-half price of common grades. *Quantity.*

"You are to cut at least 500,000 feet and not to exceed 1,000,000 feet of stock within the above specified time.

*Terms of Payment.*

It is agreed and understood that, when you have this stock out in lots of 50,000 feet, properly piled on dry piling sticks, we are to send our representative, and advance you $12 per M. feet on all stock so piled, it being understood that only common and better will be piled together, and all culls and mill culls thrown out.  When the stock is shipping dry, we are to send our inspector to inspect and measure this material according to the rules now in force and published by the National Hardwood Lumber Association.  When said lumber is so inspected and measured, we are to pay you the balance due you, figured upon the above list of prices, less the $12 per M. feet advanced, and less two per cent cash discount.

When the $12 per M. feet advancement is made, you are to mark the piles 'Property of American Hardwood Lumber Company.'  You are to give us bill of sale, covering all piles advanced on as above provided, it being stipulated in said bill of sale that only '$12 per M. feet has been advanced on the stock; it being

understood that title passes to us when the $12 per M. advance is made.

It is our intention to ship the thick, plain oak and ash green.

You are to hold the stock on your yard free of yard rent and to load same on cars at Newton, Miss.

*Inspection.*

In case of any disagreement between our two inspectors as regards loss or measurement, it is hereby agreed that both parties to this contract will abide by the decision of an authorized National Hardwood Lumber Association inspector, whose official certificate on such lumber in dispute will be considered final; in case such an inspector is called in, the buyer and seller will equally divide the expense.

*Thickness and Lengths.*

The quartered oak, both red and white, is to be cut 1 in., 1¼ and 1½ in. The plain oak is to be cut 2½ in., 3 in. and 4 in. The poplar as much as possible into 1¼ in. and 1½ in. We can also use some 1 in. and 2 in. thicknesses. Ash is to be cut as much 2½ in. and thicker as possible. You will cut as much 14 and 16 ft. lengths as possible, and not over 10 % 10 ft.

Yours Respectfully,

AMERICAN HARDWOOD LUMBER COMPANY,

By Geo. H. Cottrill, Secretary.

Accepted:

Dent-Deming Lumber Company,

By R. K. Dent, Sec'y & Treas.''

The objection to this contract was that it was so ambiguous and indefinite that it could not support plaintiff's cause of action. That there was nothing to show the amount and the quantity of each variety of lumber to be shipped. When this objection was made counsel for plaintiff stated that he expected to follow the introduction of the contract with oral tes-

timony tending to remove all indefiniteness and ambiguity, if there was any, in the contract, and that he would show that it was understood between the parties that ninety per cent of the lumber furnished should be poplar and ten per cent of the other varieties. The objection was sustained and the offer of the oral testimony also refused. The question to be decided in this court is, first, a construction of the contract; second, the admissibility of the oral testimony offered.

When the terms of a contract are clearly expressed there is no room for construction, and the contract must stand or fall as it is written. In determining what a contract means the words used in it are to be given their usual and ordinary meaning. Subject to these limitations, the court will in cases of doubt, give that construction to the language used, which will uphold the contract. [Wiggins Ferry Co. v. C. & A. R. R. Co., 128 Mo. 224, 27 S. W. 568.]

The courts will endeavor to give the contract that construction most equitable to the parties, and which will not give one party an unfair or unreasonable advantage over the other. [Johnson County v. Wood, 84 Mo. App. 489, 519; McManus v. Fair Shoe, etc., Co., 60 Mo. App. 216; Laclede Power Co. v. Stillwell, 97 Mo. App. 258, 71 S. W. 380.]

The ultimate object of the courts in construing contracts always is to ascertain the intention of the parties, and when there is room for construction at all, the court may consider in connection with the contract the condition and surroundings of the parties, and the objects they had in view and these matters if not expressed in the contract may be shown by parol.

By looking at the contract itself and the pleadings in this case we discern that the plaintiff was doing business in St. Louis, Missouri, and the defendant was doing business at Newton, Mississippi. Looking now to the contract and construing it in the light of the

rules above enunciated let us determine whether or not it is a valid contract.

The opening statement of the contract is "You may enter our order for the following hardwoods *to be gotten out* between now and January 1, 1903." (Italics are ours.) From this statement we understand that the lumber ordered was at the time in the tree and the words "to be gotten out" mean that it was to be sawed and prepared for shipment, and this was to be done by defendant. This position is given force by the following provision in the contract. "It is agreed and understood that *when you have this stock out* in lots of 50,000 feet, properly piled on dry piling sticks, we are to send our representative and advance you $12 per M. feet on all stock so piled . . . ." (Italics are ours). Plaintiff was not expected to have a man present to watch the sawing and piling of this lumber; hence, the language in the two sections of the contract including the words "to be gotten out," and the words "when you have this stock out" means that the getting out and piling of the lumber was to be done by defendant, and this necessarily included its selection by him. Then when he had gotten out and piled 50,000 feet the plaintiff was to send a representative and advance defendant twelve dollars per thousand feet and the lumber so piled was then to be marked "Property of American Hardwood Lumber Company," and title was to pass to plaintiff at that time. The contract further provided that when the lumber was dry enough to ship plaintiff was to send an inspector to inspect and measure the lumber previously piled by defendant. Again showing that the parties understood that at the time of the contract was made the lumber was yet in the tree, and was to be sawed and piled green, and it was to remain upon defendant's yards until it was dry enough to ship, at which time it was to be inspected, and if upon inspection it was found to comply with the standard

fixed by the contract the balance of the purchase price was to be paid.

At no place in this contract is the plaintiff given any discretion in relation to any matter contained therein. Its duties were, first, when notified by the defendant that 50,000 feet of lumber had been gotten out and piled to pay twelve dollars per thousand feet thereon. Its next duty was when this lumber had dried sufficiently to ship to inspect it according to the rules of the National Hardwood Lumber Association and then pay the balance of the purchase price. There was no provision in the contract which would authorize plaintiff to reject any lumber on account of the amount furnished of any particular kind, but had the entire amount provided for by the contract been gotten out and piled by the defendant from a single variety mentioned in the contract, and if on inspection this lumber had measured up to the standard provided in the contract by which it should be judged, the plaintiff would have been compelled to receive it.

Construing the contract as a whole our conclusion is that the selection of the timber was left to the defendant and it was his duty to saw and pile it, and had he done so it would have plainly been the duty of plaintiff to have accepted it, provided, upon inspection it was found to come up to the required standard. The total amount of lumber to be furnished was to be not less than 500,000 feet nor more than 1,000,000 feet, and since defendant was to select and pile the lumber, he could also, if he chose, have furnished only the minimum amount specified in the contract. This construction is a reasonable one. At the time the contract was executed the lumber was in the tree. Plaintiff knew that and also knew that when defendant went to saw it he might find some of the kinds mentioned unfit for market. He also knew that there might be difficulty in determining beforehand just how much of each

variety it would be practicable for defendant to furnish, and for these reasons the amount of each variety to be furnished could not well be inserted in the contract. In any event, since the right of selection was left to defendant he cannot now be heard to complain that the amount to be furnished of each kind was not specified in the contract for he was empowered to make the selection, and if he wanted to comply with the contract upon his part he should have done so.

Our conclusion is that this contract is not open to the objection that it is so indefinite and uncertain that it could not be complied with, and the court erred in excluding it.

As to the parol testimony offered by plaintiff it would be competent to show the situation of the parties, the fact that the lumber was not yet sawed, although that fact, we think, sufficiently appears from the contract itself, but it was not competent to show that the parties had agreed that the lumber to be furnished should be ninety per cent poplar, for that would be to add to the contract a provision which cannot be reasonably inferred from the words used in the contract, and, hence, would be open to the objection that it would vary the terms of the written contract.

It is also contended that this action must fail because no measure of damages can be fixed. Having determined that the contract authorized defendant to select the kind of lumber he would furnish plaintiff under the contract, the difficulty in fixing the standard for the measure of damages disappears. The fact that he is now called upon to respond in damages for failure to make the selection and furnish the lumber does not destroy the right of selection, but in estimating the damages for a breach of the contract it should be assumed that if he had furnished the lumber he would have made the selection that would be most advantageous to him, and would have furnished only the

minimum amount he was required to furnish if he was furnishing it at a loss. Therefore, for the purpose of fixing the damages the kind of lumber on which the damage would be least should be selected, and the amount on which it is to be computed should be fixed at 500,000 feet, the minimum amount to be furnished under the contract. If when this is done it shall appear that no actual damage has resulted to plaintiff, then in case of a verdict in its favor, its recovery would be limited to nominal damages.

The judgment will be reversed and the cause remanded. All concur.