[S. F. No. 3842. Department Two.—January 9, 1907.]

MEBIUS & DRESCHER COMPANY, Appellant, v. REGINALD MILLS et al., Individually, and as Copartners, Respondents.

CONTRACT FOR PURCHASE OF SALT—ACTION FOR BREACH—RULING AS TO IMMATERIAL EVIDENCE—EXCLUSION OF CONTRACT—AMENDMENT—SECOND OFFER UNNECESSARY.—In an action for damages for breach of a contract showing the purchase of a quantity of salt, under a scale of prices fixed according to quality, to be ordered for shipment before a time fixed, where the court ruled that the contract should be excluded from evidence, as being an executed contract which was void for incompleteness, want of materiality, and uncertainty, and allowed an amendment setting forth the specific orders made for the delivery of salt at a certain price, but declaring at the same time that no amendment of the pleading would affect its construction of the contract, no second offer of the contract was necessary after such amendment and declaration by the court. The law does not require the doing of vain things.

ID.—PROOF OF EXECUTION OF CONTRACT—SIGNATURE BY PLAINTIFF CORPORATION—AUTHORITY OF PRESIDENT—ADMISSION OF PLEADINGS.—Where the execution of the contract was sufficiently proven against the defendants sought to be charged, no proof of the authority of the president of the corporation to sign the contract for it is necessary, where no issue was raised as to his authority, which was alleged in the complaint; and an alleged demand by plaintiff corporation for a fulfillment of the contract showed a ratification of the president's signature, rendering proof of his authority unnecessary.

ID.—PARTNERSHIP OF DEFENDANTS—VARIANCE—QUESTION FOR JURY.—
If any variance existed between the complaint and the evidence
as to the partnership of the defendants, without deciding that it
did exist, the question as to such variance was one for the jury,
and the court would not be justified on that ground in summarily
withdrawing the case from the consideration of the jury by an
instruction to find for the defendants.

ID.—CONSTRUCTION OF CONTRACT—ERROR OF COURT.—Applying the proper
principles for the construction of contracts, the court erred in hold-
ing the contract to be an executed contract, which was void for the
reasons assigned. It does not evidence a completed sale, which would
be open to the objections of uncertainty and want of mutuality;
but at the most it is an executory contract of sale, and at the least
an option to purchase good until withdrawal, and binding if the
option was exercised before withdrawal.

ID.—EXECUTORY CONTRACT—OBLIGATIONS AND RIGHTS OF PARTIES.—
Treating the contract as an executory contract of sale, plaintiff
had bound itself to take a specified quantity of salt, and had a
specified time in which to select the kinds or one kind of salt which
it would use, the prices thereof being fixed, and defendants had
bound themselves to supply this salt at those prices as delivery of
the same should be demanded during the time fixed. If plaintiff
failed to take that quantity of salt of a specified kind or kinds by
the time fixed, it would be the right of the defendant salt company
to have insisted upon plaintiff taking such kind and quality of salt
as would be most advantageous to it.

ID.—OPTION TO PURCHASE—ACCEPTANCE.—Treating the contract as an
option to purchase, the legal effect is not different. Not having
been withdrawn, it became binding upon an acceptance evidenced
by the demand for the shipment of the quantity and kind of salt
ordered under the terms of the contract within the time limited
and the offer to pay the agreed price therefor.

ID.—CERTAINTY OF CONTRACT—CODE MAXIM.—The maximum amount of
quantity being fixed by the contract, the uncertainty as to the
quantity and quality of particular kinds of salt which might be
chosen is not the kind of uncertainty which renders an executory
contract unenforceable. The agreement is relieved of uncertainty
when the choice is exercised; and such contracts come within the
maxim embodied in section 3538 of the Civil Code, that "that is
certain which can be made certain."

ID.—CONSTRUCTION UPHOLDING CONTRACT PREFERRED.—There being two
permissible constructions of the contract in question which fairly
express the meaning of the parties and which make a valid and bind-
ing instrument, and if it be conceded that a construction making
the contract an executed sale is possible, under which it would be
invalid, then the rule must be applied that a construction which
establishes a valid contract is to be preferred to that which does
not.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. John Hunt, Judge.

The facts are stated in the opinion of the court.

W. F. Williamson, Wm. E. Kleinsorg, and Albert M. Johnson, for Appellant.

Walter M. Willett, Louis Titus, H. M. Wright, and Franklin P. Bull, for Respondents.

HENSHAW, J.—Plaintiff sued defendants individually and as copartners doing business under the name of The Russell and Mount Eden Salt Company, for damages for breach of contract for failure to deliver salt in accordance with the demand of plaintiff, under the terms of a written contract between the parties. Trial was had before a jury. The preliminary proofs were made and the contract offered in evidence. The court refused its admission upon the ground of its incompleteness and uncertainty, treating the writing as an executed contract of sale. Plaintiff contended that the contract should be construed as an executory contract of sale, or as an option of purchase, which option had become effectively binding upon defendants by subsequent orders for the delivery of salt made upon defendants within the time prescribed in the contract. It sought and obtained leave to amend its complaint by showing the specific orders for salt which it had made upon defendants pursuant to its agreement, and the court permitted these amendments to be made. In so doing, however, the court declared that no change in pleading could affect its construction of the contract, which it regarded as void for uncertainty. Upon this the case was submitted without a second offer of the contract, and the jury, under instructions from the court so to find, gave its verdict for defendants, and plaintiff appeals.

Certain preliminary and minor objections are presented by respondents,—viz. that the principal question, that of the construction of the contract, cannot here be considered, for the reason that after the amendment to the complaint the contract should have been offered in evidence again, and that this was

not done, and that upon the condition of the pleadings at the time when the contract was offered the court's ruling was correct. A second offer of the contract would have been inutile under the declaration of the trial judge, that no amendment to the pleadings could affect his construction of the contract. The law does not require the doing of vain things, and a second offer, under the circumstances disclosed in the record, was not necessary.

Of the objection that the contract when offered was not proved to have been signed by the president of plaintiff corporation, it is sufficient to say that the execution of the contract was sufficiently proved against the defendants, who were the parties sought to be charged. No issue was raised as to the authority of the president to sign, though his authority. is alleged in the complaint, and the demand upon the part of plaintiff corporation for a fulfillment of what it conceived to be the terms of the contract was a sufficient ratification to have made proof of the original signing by plaintiff unnecessary. Upon the question of a variance between the allegations and proofs touching the partnership, if it be conceded that such variance exists, a question which it is not necessary to decide, and which is therefore not decided, this would not have justified the summary withdrawal of the case from the consideration of the jury by the instruction to find for the defendants which was given them by the court. It would have been for the jury, after all, to say whether plaintiff should have failed because of the asserted variance. Moreover, the case was taken from the jury, as has been said, by the refusal of the court to admit in evidence the contract, which was vital to appellant's case, and by its subsequent instruction to the jury to find for the defendants. The paramount question in the case, therefore, is the construction of the paper writing between the parties.

Plaintiff's business was that of a merchant selling salt. and other merchandise. Defendants were manufacturers and sellers of salt. Upon June 23, 1900, the parties entered into the following agreement:—

"SAN FRANCISCO, CAL., June 23rd, 1900.
"MEBIUS & DRESCHER CO.,
          "Sacramento, Cal.,
    "Bought of the Russell and Mount Eden Salt Company, Dealers in Salt of all kinds. A. L. Lundy, Manager. 226 Clay St.
"Salt Works,
          "Alameda County, Cal.          Subject to sight draft
"Capacity, 15,000 Tons per annum.     if not paid when due.

---

    "750 Tons of Salt—
"Table Salt in Bales any size.....................$1.02½
"Dairy Salt in 50-lb Cotton sacks................ 7.00
"Im't. Liv. Salt Wellington Brand 50's............ 9.25
    "      "      "        "        "    100's............ 8.75
    "      "      "        "        "    230's............ 8.25
"Half Ground Salt 50's......................... 4.25
    "        "      "  100's......................... 4.00
"Coarse Salt 50's............................... 3.90
    "      "  100's............................... 3.65

"The above prices are f. o. b. Sacramento, excepting such quantities as the buyers may direct shipped by rail from Hayward Station, in which case a rebate of 75 cents per ton will be allowed.

"All the above salt to be ordered shipped before January 1st, 1902. The sellers are to be allowed a reasonable time for making shipment. Shipments are to be made in not less than 100-ton lots, excepting from Hayward station in car-load lots.
          "THE RUSSELL AND MOUNT EDEN SALT CO.,
                    "By A. L. LUNDY, Manager.
"Accepted:
      "Mebius & Drescher Co.,
        "By P. C. Drescher, President."

Upon the eighteenth day of December, 1900, plaintiff demanded of the defendants the delivery of one hundred and eleven tons of table salt under this agreement, offering to pay therefor the rate specified in the above contract. On the fifteenth day of May, 1901, plaintiff made further demand upon defendants for six hundred and thirty-nine tons of table salt, then and there offering to pay at the rate specified in the

above contract.  Defendants refused to comply with these demands, or to fill any part of the order.  Plaintiff then served notice that upon such refusal they would be compelled to purchase the salt in open market, and would hold defendants responsible for the difference between the contract price and that which they were compelled to pay.  These facts present the gist of the present action.

As has been said, the trial court insisted upon treating the agreement as an executed contract of sale, void for uncertainty and lack of mutuality, and refused to regard it from any other view-point, or to consider it at all in connection with the subsequent demand made by plaintiff, within the time limited in the memorandum, for a delivery of certain specified quantities of salt, bought at the price and in the manner and under the terms set forth in the agreement.  In this we think the court was misled into taking too narrow a view of the question, and, in particular, in considering itself bound to treat the contract as an executed contract of sale by reason of the statement contained therein, "Mebius & Drescher Company *bought of* the Russell and Mount Eden Salt Company 750 tons of salt."  While it is true that parol evidence may not be permitted to vary the terms of a written contract, it is equally true that in construing a contract all parts of it are to be considered, and the circumstances surrounding its making to be regarded, with a view of arriving at the true intent of the parties.  Nor, is it the name parties may give to their contract which determines its character.  That is to be determined from a critical inspection and analysis of the whole instrument.  So reading this instrument, it becomes apparent that it does not evidence a completed sale, wherein it would be open to the objection of uncertainty and lack of mutuality which the court put upon it, but that, at the most, it was an executory contract of sale, and, at the least, an option of purchase, good until withdrawal, and binding if the option were exercised before withdrawal.  Treated as an executory contract of sale, plaintiff had bound itself to take seven hundred and fifty tons of salt.  It had until January 1, 1902, in which to select the kinds of salt which it would use, the prices thereof being fixed, and defendants, upon the other hand, had bound themselves to supply this salt at those prices as delivery should be de-

manded during the time fixed. Certainly this is a perfectly reasonable contract for a salt merchant to enter into with a salt manufacturer. If Mebius & Drescher failed to take seven hundred and fifty tons of salt of specified kinds by January 1, 1902, it would have been the right of the Russell and Mount Eden Salt Company, since there had been a failure to exercise the right of choice, to have insisted upon their taking such kind and quality of salt as would have been most advantageous to it. And Mebius & Drescher, under such circumstances, could not have been heard to complain if they were hurt by their own remissness in exercising the right of selection which had been given to them. Upon the other hand, the Russell and Mount Eden Salt Company clearly bound themselves to furnish seven hundred and fifty tons of salt under orders of not less than one-hundred-ton lots, at prices fixed by their agreement, of any or of all the kinds set forth in the memorandum. It was therefore competent and proper for Mebius & Drescher to have ordered salt of several different kinds, or, depending upon the condition of the market and their opportunity to make advantageous sales, to have ordered all of the salt of one kind, as they did. Nor of this could the defendants be heard to complain, since, if they had not been willing to furnish all the salt of one or another quality, it was a perfectly simple matter for them to have had the contract so declare, and to have provided a maximum amount of each quality which could be ordered. So much for the contract as an executory contract of sale. Mebius & Drescher, having exercised their right of selection within the time limited by contract, it became the clear duty of the defendants to ship to them the seven hundred and fifty tons of table salt ordered in accordance with the terms of the contract.

But, treating the contract as a mere option, the legal effect is no different. As an option of purchase it held good until withdrawn, and became binding upon acceptance. The acceptance was evidenced by the demand for the shipment of salt and the offer to pay, all in accordance with the terms of the contract, and it is not pretended that there was any withdrawal before this acceptance. There are thus, at least, two permissible constructions of this contract, which may be said fairly to express the meaning of the parties, and which make

it, in the eye of the law, a valid and binding instrument. If it even be conceded that the third construction, that of an executed contract of sale, which the trial court adopted, is equally permissible, then must be invoked the familiar rule of construction that as between two permissible constructions, that which establishes a valid contract shall be preferred to that which does not, since it is reasonable to suppose that the parties meant something by their agreement, and were not engaged in an attempt to do a vain and meaningless thing. The uncertainty as to the quality and quantity of salt which might be ordered under the contract is not the uncertainty which renders such contracts invalid. The maximum amount was fixed by the order. There was no uncertainty in that sense as to quantity. It is uncertainties of this latter kind, where it cannot be determined whether it was a pound or a thousand tons, a peck or a million bushels, that have justly been held to render contracts unenforceable in law. But here the maximum amount which the seller could be called upon to deliver, and the purchaser be called upon to take, was absolutely fixed, and it may not be said that, because a certain play of discretion as to quality was allowed within that limit, this discretion introduced an element of uncertainty which would invalidate the contract. Reduced to simpler terms, if a man should say to a seller, "I will take from you three dozen pocket-knives of one or all of three described kinds," the price for each kind being specified, "but I want you to agree to give me a week in which to determine which of the kinds I will select," it would come with some astonishment to a merchant to be told that such an agreement was void in law for uncertainty. It is probably safe to say that a million of such transactions take place every month throughout the country without question or the possibility of question as to the legality of the agreement. The agreement is at once relieved of uncertainty when the choice is exercised, and such contracts come directly within the letter as well as the spirit of the maxim embodied in our Civil Code (sec. 3538), "That is certain which can be made certain." In summing up upon this matter, therefore, we hold this contract to be an executory contract of sale, containing no elements of uncertainty which would render it invalid and imposing a mutuality of engagement upon the parties to it.

It does not fall within the sweep of the condemnation of contracts such as that in *Cold Blast Co.* v. *Kansas City etc. Co.*, 114 Fed. 77, [52 C. C. A. 25], where there was no specification as to the quantity to be delivered, and which was a mere offer to deliver certain materials at prices stated. The court held there that there was no mutuality, and that there was a vital uncertainty in terms, in that it could not be determined what was the quantity contemplated to be delivered. In *Crane* v. *Crane Co.*, 105 Fed. 869, [45 C. C. A. 96], the principles to be invoked in construing contracts such as this are well set forth, but the vice in the contract there reviewed was the vice of lack of mutuality, there being no agreement to purchase. In *American Cotton Oil Co.* v. *Kirk*, 68 Fed. 791, [15 C. C. A. 540], the court expresses the conclusive objection to the contract in the following language: ''The time of ordering as well as the quantity was left wholly to the wish of one party, who might drag it over a hundred years.'' And so, without prolonging the discussion, the same distinction will be found to obtain in all cases upon which respondents rely. Upon the other hand, and as showing that contracts of the nature of the one here in suit, are enforceable in law, and that damages for their breach may be recovered, reference may be made to *Great Northern Ry. Co.* v. *Witham*, L. R. 9 C. P. 16; *Topliff* v. *Topliff*, 122 U. S. 121, [7 Sup. Ct. Rep. 1057]; *Cherry* v. *Smith*, 3 Humph. (Tenn.) 19, [39 Am. Dec. 150]; *Robson* v. *Miss. Riv. Logging Co.*, 43 Fed. 371; *Wells* v. *Alexander*, 130 N. Y. 642, [29 N. E. 142]; *Nat. Furnace Co.* v. *Keystone Mfg. Co.*, 110 Ill. 427.

For the foregoing reasons the judgment and order appealed from are reversed and the cause is remanded.

McFarland, J., and Lorigan, J., concurred.