[S. F. No. 6222.   Department One.—March 17, 1914.]

## LAS PALMAS WINERY AND DISTILLERY (a Corporation), Respondent, v. GARRETT & COMPANY (a Corporation), Appellant.

SALE—ACTION TO RECOVER VALUE OF GOODS—FAILURE TO REDUCE CONTRACT TO WRITING.—In this action to recover the reasonable value of goods sold by the plaintiff to the defendant, there is enough in the evidence to support the conclusion of the trial court that it was the understanding of the parties that an alleged contract to sell wine, for the breach of which the defendant sought damages by way of cross-complaint, was not to become binding until evidenced by a written agreement, and that such contract never was reduced to writing.

ID.—CONTRACT—UNDERSTANDING THAT IT SHALL BE REDUCED TO WRITING.—Where it is the understanding of the parties to a contract that its terms are to be reduced to writing before it shall become binding upon them, it is essential to a valid and binding contract that the assent thereto shall be thus expressed.

ID.—BREACH OF CONTRACT OF SALE—ABSENCE OF DAMAGES.—A buyer of wine is not damaged by failure of the seller to perform his agreement if he can purchase such wine in the same market at the agreed price.

ID.—AGENCY—BREACH OF CONTRACT CREATING—EVIDENCE AS TO DAM-
AGES.—In this action to recover the reasonable value of goods sold
by the plaintiff to the defendant, wherein the defendant sets up
by cross-complaint the breach of a contract by the plaintiff con-
stituting the defendant the selling agent of the plaintiff's liquors
in certain parts of the United States, the findings as to the defend-
ant's damages are supported by the evidence.

ID.—BREACH OF CONTRACT OF SALE—EVIDENCE TO SUPPORT FINDINGS.—
In such action the findings as to the damages for the alleged breach
of another contract between the plaintiff and the defendant which
provided for the sale to the defendant of such wines as it might
order and the plaintiff might have on hand unsold at the time of
receiving an order, are also supported by the evidence.

APPEAL from a judgment of the Superior Court of Fresno
County. George E. Church, Judge.

The facts are stated in the opinion of the court.

. E. L. Travis, Frank H. Short, and F. E. Cook, for Appellant.

L. L. Cory, for Respondent.

ANGELLOTTI, J.—This is an appeal by defendant, a for-
eign corporation, from a judgment given in favor of plaintiff
corporation for $5,383.35. The action was one to recover the
reasonable value of goods, wares, and merchandise alleged to
have been sold and delivered by plaintiff to defendant, with
interest, and the judgment was for the full amount claimed,
viz.: $4,806.48, and interest to the date of judgment, less an
offset of $107.24, aggregating said sum of $5,383.35.

Upon the trial it was stipulated that all of the allegations
of plaintiff's complaint were true and correct, and that the
only defense in behalf of defendant would be "what amount
the court should give it as a counterclaim to offset the admitted
claim of the plaintiff against the defendant." The claim of
defendant in this regard was based upon certain alleged con-
tracts between itself and plaintiff, which are set up in defend-
ant's cross-complaints numbered 1st, 2d, and 3d. The first
and second cross-complaints were for damages for the failure
of plaintiff to comply with the provisions of an alleged con-
tract, which in fact embraced two contracts, one of which is
termed the agency contract, and the other the purchase and

sale contract. The answer of plaintiff to these cross-complaints appears to admit that the parties entered into this contract. However this may be, the findings of the trial court so expressly declare, and these findings are of course conclusive upon us on this appeal by defendant. The third cross-complaint was for damages for the failure of plaintiff to comply with the terms of an alleged contract, which is called the Alicante port contract, for the sale by it to defendant of fifty thousand gallons of Alicante port wine, at eighteen cents per gallon. It is not entirely clear that the plaintiff did not admit in the answer to the cross-complaint that this alleged contract was entered into by the respective parties, with the result that it was a valid and binding contract. The trial court found substantially that no such contract was ever entered into by the parties. It is clear enough that the case was tried upon the theory that the pleadings presented an issue on this question, the judge having ruled that such an issue was made. Counsel for defendant apparently waived this objection. After the court said that he would have to interpret the answer as a denial of the contract, the record shows the following: "Mr. Travis (attorney for defendant): We will not insist upon an admission that was made by an inadvertence. I have omitted all proof of the execution of the contract upon the theory that the question was behind me." He then introduced evidence on this question. We are satisfied that it cannot now be maintained by defendant that the matter was not in issue.

We will take up first the claim of defendant based on the Alicante port contract. The trial court found substantially as follows: Both contracts were the result of certain oral negotiations and arrangements had between the parties, through their respective managers in San Francisco, California, on January 15, 1910. "It was then and there agreed, as part of such arrangements, that the same and all thereof were to be reduced to writing, and not to become binding upon any party until so evidenced by a written contract or agreement." On January 21, 1910, plaintiff, pursuant to said arrangement and for the purpose of evidencing the oral agreement made on January 15, 1910, prepared and forwarded to the defendant at Norfolk, Virginia, a form of contract as follows:

"Fresno, California, Jany. 21, 1910.

"GARRET & CO.,
    "Norfolk, Va.
"Gentlemen:

"We acknowledge that you have bought, and we have sold you fifty thousand gallons 'Alicante' Port (as sampled and selected by you), at $ .18 naked, f. o. b. Las Palmas, delivery to be completed before August 1st, 1910; cooperage, *prime* cost to us.   Please confirm.

"Yours truly,
        "LAS PALMAS WINERY AND DISTILLERY,
            "L. R. Rogers, President."

This was never confirmed or accepted by the defendant at any time.   Defendant at all times refused to confirm said written contract or reduce the same to writing, and the same was never consummated or executed by the parties.   While said negotiations were pending, plaintiff did ship to defendant four thousand three hundred and twenty gallons of said port, for which defendant has never paid.   (The amount due therefor is included in two items of the account on which plaintiff based this action.)   At all times, defendant could have purchased large quantities of wine at Fresno of the same kind, quality, and quantity as it claimed was to be furnished and sold by plaintiff, at prices not in excess of the prices mentioned in the contract, and has never purchased any of said wines except a small quantity of sherry.   Defendant has not been damaged in any sum whatever by reason of the failure of plaintiff to furnish any Alicante port in addition to that furnished.

These findings are attacked as not having sufficient support in the evidence.   An examination of the record shows to our satisfaction that there is enough in the evidence to support the conclusion of the trial court that it was the understanding of the parties that the agreements were to be reduced to writing and were not to become binding upon either party until evidenced by a written contract or agreement.   Testimony given by Mr. Rogers was legally sufficient, if believed by the court, to warrant such conclusion.   If such was the understanding, it was essential to a valid and binding contract that defendant should unequivocally assent in writing to the terms stated in the writing of January 21, 1910.   (See *Spinney* v.

*Downing,* 108 Cal. 666, [41 Pac. 797].) The letter of January 21, 1910, expressly called for confirmation. The finding of the trial court that defendant refused to confirm the same in writing has enough in the evidence to support it. The letters of Mr. Garrett to Mr. Rogers contain no clear and unequivocal assent to the terms proposed, although on February 22, 1910, Rogers, as president of plaintiff, called Mr. Garrett's attention to the matter and stated to him that he had not complied with his request to confirm the contract. The letter of the last named date, after setting forth a copy of the letter of January 21, 1910, said: "We invite your attention to the above and beg to say we have never received any confirmation upon same and as it is a matter of some importance to us, we would thank you to formally confirm the same in writing." Apparently nothing in the nature of a confirmation or written acknowledgment thereafter came from defendant. The Alicante port in fact shipped to defendant was shipped, as we have said, while negotiations were pending, and in reliance upon the fact that the proposal would be accepted and confirmed in writing by defendant.

In view of our conclusions upon the question already discussed, it is unnecessary to consider claims made in regard to other findings relative to the Alicante port matter. There having been no binding contract in regard to the same, plaintiff was not legally bound to furnish the wine. However, we are of the opinion that it cannot fairly be held that the evidence is not legally sufficient to support the conclusion of the trial court that, even if there was a binding contract, defendant was not damaged by plaintiff's failure to perform the same, in that defendant could have purchased at Fresno after the alleged breach port wine similar in character, value, quantity, etc., to that referred to at as low a price as that specified. (Civ. Code, secs. 3308, 3354; *Bullard* v. *Stone,* 67 Cal. 477, [8 Pac. 17].)

The other alleged contract was, as we have said, one containing in fact two contracts.

The first was one constituting defendant the selling agent in all parts of the United States except certain limited portions thereof not necessary to be here specified. Defendant was to offer plaintiff's wines and brandies to the trade in bulk, "it being understood that any and all sales are to be made,

subject to our confirmation, and at prices to be fixed by us.''
Plaintiff was to make out bills to buyers. Losses sustained
were to be shared equally. Minimum prices were fixed. All
liquor was to be sold for prices in excess of such minimum
prices, and the excess was to be divided equally. It was pro-
vided that the agreement was ''to continue in force until
terminated by sixty days' written notice, given by one of us
to the other.'' The trial court found that on March 1, 1910,
such a written notice of termination was mailed by plaintiff
to defendant, and that the same was received by defendant
on March 12, 1910. This finding does not appear to be at-
tacked by defendant, and is therefore conclusive upon us.
The contract was in force, therefore, only from February 8,
1910, to May 12, 1910. The court further found substantially
as follows: No order of any kind for the sale of any wine under
said contract was ever taken by defendant or submitted to
plaintiff for its confirmation, except one for the sale of certain
wine to one John Skirtulsky, which order was confirmed but
never filled. The damage to defendant on account of this
failure of plaintiff was $107.24, which amount was allowed
as an offset *pro tanto* to plaintiff's claim. Otherwise, plain-
tiff has in all respects complied with its contract, and defend-
ant has been in no respect damaged by any failure on the part
of plaintiff. These findings are attacked.

Defendant's claim for damages on account of this contract
is limited by its proof, outside of the Skirtulsky matter to
which we have just referred, to loss of profits on two alleged
orders for liquor to be furnished, one being an alleged order
for eight hundred barrels of sherry to be sent to the firm
of Sharp & Dohne at Baltimore, on which defendant's profit
would have been two thousand dollars; and the other an
alleged order for wine to be sold and delivered to a firm in
the West Indies on which the profit to the defendant would
have been three thousand nine hundred dollars. As to the
latter order, admittedly plaintiff had the right to refuse to
make any sale, for under the terms of the contract defend-
ant was not entitled to act as plaintiff's agent for that terri-
tory. There is no force in the claim that plaintiff is estopped
by its conduct in regard to this transaction from setting up
in this action his right to decline to make the sale on this
ground. The only thing that can possibly be claimed to have

been an order in this matter was contained in a letter dated March 30, 1910. On April 30, 1910, Rogers answered, saying substantially that if defendant would settle its overdue account, "and satisfy us about paying us for such shipments," he thought they could furnish the wines. This is all there is to support any claim of estoppel. Manifestly it amounts to nothing in that behalf. The order not being one plaintiff was bound to honor, it was at liberty to impose any condition it saw fit. It promptly refused to accept the order, except upon certain conditions which it had a legal right to impose, inasmuch as the subject matter was in no way included in any contract between it and defendant.

As to the Baltimore order: The evidence clearly supports the conclusion that no such order was ever definitely submitted to plaintiff for confirmation. We are of the opinion also that the conclusion of the trial court that no such order was ever taken by defendant has sufficient support in the record. There are in some of the many long letters written by Mr. Garrett to Mr. Rogers some reference to a possible deal with a Baltimore firm for eight hundred barrels of sherry, to be paid for in part by certain machinery which defendant desired, but there is nothing in either the letters or in the testimony of Mr. Garrett to compel the conclusion that any agreement on the subject was ever concluded between defendant and the Baltimore firm, or that any order was ever finally received by defendant from the Baltimore firm.

The considerations we have stated dispose of the claims of defendant based on the agency contract.

The other contract was the one termed the purchase and sale contract. It provided that plaintiff was to sell and deliver to defendant, f. o. b. cars Las Palmas, before its next vintage, wines in its cellars which defendant has sampled for use in its blending and bottling business, as defendant might order for shipment, provided that plaintiff has the same on hand, unsold, at certain specified prices. In view of the findings of the trial court, this contract must be held to have been in force to May 12, 1910. The trial court found that no large quantity of wine was ordered by defendant other than the port wine to which we have referred; that certain sherry and sherry materials were asked for in one or more letters, but that at the time of the receipt of these letters plaintiff

did not have in its cellar, unsold, any sherry or sherry material, all of the same that had been sampled by defendant having been sold or otherwise disposed of by plaintiff prior to the receipt of any letter or request from defendant; that at the time defendant claims to have given orders for the purchase of any wines, plaintiff did not have on hand any of the kind ordered sufficient or enough to fill any of such alleged orders; that plaintiff in no respect violated any of its obligations under said contract; that defendant was not obliged to nor did it purchase wines from other sources at any advanced prices in order to meet any of the requirements of its business; and that defendant has not been damaged in any sum whatever by reason of any breach of said contract by plaintiff, or by reason of the purchase of any wines from other sources, or by reason of being obliged to pay any increased price therefor. It further specifically found that at all the times herein mentioned defendant could have purchased large quantities of wine at Fresno of the same kind, quality, and quantity as it claims was to be furnished and sold by plaintiff, at prices not in excess of the prices mentioned in said contracts, and never purchased any except a small quantity of sherry material.

Concededly no order for any wine under this contract except certain orders for sherry and sherry material was ever given. It was attempted to be shown by defendant as a basis for further damage that it would have ordered other wines but for the explicit statement by plaintiff to it that it (plaintiff) would refuse to ship any more wines under the contract. The trial court excluded this evidence, and we are of the opinion that it did not err in doing so. The agreement of sale was only for such portions of plaintiff's wines in its cellars as might be ordered by defendant, and as might be on hand unsold at the time of an order therefor. Defendant was under no legal obligation by reason of the contract to take a single drop of wine from plaintiff, and any liability on the part of plaintiff could arise only as to such wine as was in fact ordered, for the agreement purported to cover nothing else. As to such an agreement as we have here, it appears to us to be very plain that whatever statement plaintiff may have made as to its intention in regard to carrying out the contract, there could be no violation by it of any obligation

created thereby in the absence of an order for wine thereunder. And to attempt to determine what defendant would have done in regard to availing itself of what was in effect no more than an offer on the part of plaintiff to sell to it such portions of certain specified wines as it might order, at certain specified prices, if plaintiff had not declared its intention not to comply with any order thereunder, would certainly have been to enter the realm of conjecture. As we have suggested, plaintiff's proposition was practically simply an offer, and liability thereunder could attach only in so far as there was an acceptance by order. It was found that some sherry and sherry material were ordered. As to these, as we have seen, the trial court found substantially that there was no damage caused defendant, inasmuch as it could have purchased the wine ordered in the same market, of the same kind and quality, at prices not in excess of the prices mentioned in the contract. While there is evidence in the record opposed to this finding, there was positive and substantial evidence in support thereof, and the finding is therefore conclusive upon us, whatever we might think of the matter were we exercising the functions of a trial judge. It should be unnecessary to state what has so often been stated that the credit to be given a witness is solely a question for the trial judge. The findings we have just referred to sufficiently dispose of defendant's claim based on the purchase and sale contract, and render consideration of other findings complained of unnecessary.

Our conclusions upon the matter just discussed make it apparent that the judgment should not be reversed on account of the refusal of the trial court to allow defendant to examine Rogers as to statements in plaintiff's books for the purpose of ascertaining what wines plaintiff had on hand at the time of the orders for sherry material and sherry, even if it be conceded that the court erred in its ruling. The record shows that this was the only purpose of such proposed testimony stated on the trial. Nothing whatever was said to the trial court about using the books on the question of the increase of value of such wine, for the purpose of showing that sales of such wine made by plaintiff to others were for a higher price than those specified in the contract. That suggestion was apparently first made in defendant's brief in this court.

It was "the amount of wines on hand" that the trial court was told defendant wished to show, and the question finally ruled upon by the trial court was "Will you prepare, will you tell us from your books all shipments made between the time that Mr. Lachman took the samples and the twelfth day of May?"

The conclusions already stated render unnecessary the consideration of any other point made in defendant's briefs.

The judgment is affirmed.

Shaw, J., and Sloss, J., concurred.