[Civ. No. 15041. Second Dist., Div. Two. Dec. 7, 1945.]

STORE PROPERTIES, INC. (a Corporation), Appellant, v. JOHN W. NEAL et al., Respondents.

Maurice Rose and Theodore Weisman for Appellant.

Sanner, Fleming & Irwin and John Amos Fleming for Respondents.

MOORE, P. J.—From a judgment of dismissal entered pursuant to an order sustaining a demurrer to its second amended complaint plaintiff appeals. The action is one for the specific performance of a contract which plaintiff contends was created by its acceptance of the offer of defendants as follows:

"Coldwell, Banker & Company,

523 West Sixth Street,

Los Angeles 14, California

Gentlemen:

"We, as lessors, propose to lease to Store Properties, Inc., as lessee, the property at the southeasterly corner of Brighton Way and Beverly Drive in Beverly Hills, California, lot size 100′ by 150′, upon the following terms and conditions:

"(1) The lease shall run for a term of 99 years, commencing on the first day of November, 1944.

"(2) The rental for said term shall be at the rate of $750.00 monthly for the first 15 years of the lease; $800.00 monthly for the following 10 years; $850.00 monthly for the following 24 years; $1,000.00 monthly for the following 50 years.

"Upon execution and delivery of the lease the lessee shall pay to the lessor the sum of $18,000.00, $9,000.00 of which shall be as consideration for the execution of the lease, and the remaining $9,000.00 shall cover the first year's rental.

"(3) In addition to the above rental, Lessee will pay all

taxes, assessments, insurance, and maintenance; in other words, the above rental will be net to the lessor.

"(4) Upon execution and delivery of the lease, the lessee will place in trust or escrow the sum of $30,000.00 as a guarantee that the lessee will make building improvements or alterations at a total cost of not less than $30,000.00. Said sum of $30,000.00 shall be released to the lessee when such improvements or alterations are completed.

"(5) The lessor shall furnish at the expense of the lessor at the time of execution and delivery of lease, a leasehold policy of title insurance with liability of $39,000.00 showing title to said property vested in the lessor, free and clear of any and all liens, except taxes not delinquent, and such conditions, restrictions, reservations, easements, rights and rights of way of record as the purchaser may approve, and insuring the leasehold interest of the lessee under said lease.

"(6) The property shall be delivered to the lessee subject to presently existing leases and such month-to-month tenancies as may exist at the date of commencement of lease, and all written leases shall be subject to the approval of the lessee, and the lessor's interest therein shall be assigned to the lessee.

"(7) Taxes, rents and insurance shall be prorated as of the date of execution of the lease.

"(8) Terms and conditions of the lease not covered by this proposal shall be subject to the approval of both parties.

"(9) Lessee shall deposit with Coldwell, Banker & Company the sum of $5,000.00 as evidence of good faith. If this offer is accepted by the lessee of said property and a lease is prepared and mutually agreed upon, the lessee shall, upon execution and delivery of said lease, pay to the lessor of said property this sum of $5,000.00 to apply on the first payment under said lease. If a lease upon the above terms and conditions has not been executed within thirty (30) days from date hereof, both parties reserve the right at any time thereafter, put prior to the execution of such a lease, to terminate this offer and the above sum of $5,000.00 shall thereupon be returned to the lessee upon demand.

"(10) This proposal shall become null and void unless accepted in writing by the lessee on or before 12 o'clock noon October 23d, 1944.

> John W. Neal,
> Clara B. Neal.

"October 20, 1944

"We agree to enter into a lease on the above described property on the terms as set forth above.

                    STORE PROPERTIES, INC.,
                                SAMUEL GENIS,
                                     President."

By appropriate allegations plaintiff declared that the offer and acceptance constitute a valid, binding contract for a 99-year lease. The complaint includes many formal allegations, alleges plaintiff's deposit of $5,000, the reasonable value of the leasehold, its agreement to deposit $30,000 as a guaranty that the improvements and alterations would be completed, its receipt from defendants of a form of formal lease and its execution thereof at the request of defendants. The pleading includes a number of argumentative allegations which cannot add to the value of the factual declarations relative to the alleged contract. The offer and acceptance are attached as Exhibit A and the proposed formal lease as Exhibit B.

Defendants contend that by reason of its indefiniteness and uncertainty the writing is not an enforcible contract; that it lacks mutuality; that even though Exhibit B be considered as one of a series of acts with Exhibit A still there is no contract susceptible of enforcement; that Exhibit B is ineffectual in that it contravenes the statute of frauds. On the other hand, plaintiff argues: (1) that defendants' proposal to execute a lease incorporated all the terms necessary to constitute a valid instrument; (2) that defendants' offer having been accepted in writing and the acceptance of such offer having been delivered to defendants, the result is a binding contract to lease on the terms specified in the offer; (3) that defendants cannot maintain uncertainty in the contract with reference to the improvements to be made for the reason that they left the nature of such improvements to the judgment of plaintiff, which was to enjoy their exclusive use; (4) that Exhibit A contains no clause reserving to defendants the right to refuse to sign a proper form of lease after its acceptance by plaintiff.

Inasmuch as we have concluded that the offer and acceptance do not constitute an enforcible contract we confine our discussion to that attack upon the sufficiency of the pleading.

An agreement cannot be specifically enforced if its

terms are not sufficiently certain to make the precise act which is to be done clearly ascertainable. (Civ. Code, § 3390.) A court of equity will not specifically enforce that which is only the basis for an agreement. An instrument which is the subject of such an action must be complete and certain. (*Los Angeles Immigration & Land Cooperative Association* v. *Phillips*, 56 Cal. 539, 547.) While it is a cardinal principle of natural justice that a person shall perform his agreement, yet in order for it to be enforcible it must be definite and certain in its terms and he who demands specific performance must establish by clear and satisfactory proof the existence of the contract alleged. If the things mentioned in the agreement are the subject of future ascertainment then the agreement is not final but is indefinite and uncertain in its terms and cannot be enforced in equity. (*Magee* v. *McManus*, 70 Cal. 553, 557 [12 P. 451].) Even though a contract expressed in general terms might not be void and although it might be the basis of an action for damages, yet it may be entirely too loose and inexact to warrant a decree for specific performance. (*Stanton* v. *Singleton*, 126 Cal. 657, 664 [59 P. 146, 47 L.R.A. 334].) Where a contract appears to be a preliminary agreement "embodying only the spirit of a contemplated supplementary contract . . . and it is perfectly clear . . . that the minds of the parties never met upon the details" then it is not enforcible. (*Warson* v. *Talpey-Arnold Syndicate*, 202 Cal. 656, 659 [262 P. 716].) When it is the understanding that the terms of a contract are to be reduced to writing and signed by the parties, assent to its terms must be evidenced by a writing subscribed by all of them; otherwise it does not become a completed contract. (*Spinney* v. *Downing*, 108 Cal. 666, 668 [41 P. 797] ; *Las Palmas Winery & Distillery* v. *Garrett & Co.*, 167 Cal. 397 [139 P. 1077].) When only the principal provisions of a lease are agreed upon, leaving the details and conditions to be expressed in a writing to be executed by the parties, and such writing is never signed by those to be charged, it never becomes a binding obligation upon either. (*Linnard* v. *Sonnenschein*, 94 Cal. App. 729, 733 [272 P. 315].) If parties contemplate a reduction to writing of their agreement before it can be considered complete, there is no contract until the writing is signed. (1 Williston on Contracts, 59.) If a writing is viewed as the consummation of the negotiations there is no contract until the written draft is finally signed. (*Mississippi & Do-*

*minion Steamship Co., Ltd.* v. *Swift,* 86 Me. 248 [29 A. 1063, 41 Am.St.Rep. 545].) To be finally settled an agreement must comprise all the material terms and conditions which the parties intend to introduce. In their absence there is no completed contract. (*Schenectady Stove Co.* v. *Holbrook.* 101 N.Y. 45 [4 N.E. 4]; *Monahan* v. *Allen,* 47 Mont. 75, 80 [130 P. 768].)

Under the principles established by the foregoing decisions it is clear that no agreement enforcible at equity was made by the parties herein. There was a promise by defendants to lease their property to plaintiff for 99 years provided that if ''a lease upon the above terms and conditions has not been executed within 30 days from date hereof, both parties reserve the right at any time thereafter, but prior to the execution of such a lease, to terminate this offer.'' The proposal also provides that the terms and conditions of the lease not specified therein shall be subject to the approval of both parties; that ''upon execution and delivery of the lease, the lessee shall pay'' etc.; that ''upon execution and delivery of the lease, the lessee will place in escrow the sum of $30,000''; that ''taxes, rents and insurance shall be prorated as of the date of the execution of the lease''; that if this offer is accepted . . . and a lease is prepared and mutually agreed upon, the lessee shall upon execution and delivery of said lease, pay. . . .'' Such language clearly implies that the parties contemplated the execution of a formal lease as a necessary act towards the culmination of their proposed transaction. Moreover, the provision in paragraph 9 of the offer is a definite reservation of each party to be released from every obligation under the contract if the lease shall not have been executed within 30 days from the date of the offer.

It was evidently the numerous provisions contemplated as indispensable to a competent 99-year lease that caused defendants to include those provisions in paragraphs 8 and 9, providing for their own approval of the lease thereafter to be prepared and for their reservation of the right to terminate the offer if a lease should not be executed within 30 days after the offer.

Further to demonstrate the soundness of our thesis that the parties must have intended the execution of a lease as a condition precedent to the consummation of the negotiations we return to a consideration of the covenants that should be agreed upon before it can be said that the minds of the parties

have met upon all of the essentials of a contract of such importance as a 99-year lease. Absent from Exhibit A are provisions for (1) the kind of a building and the nature of its construction; (2) the nature of its foundation; (3) the type of its roof, its conformance with restrictions, zoning ordinances and other legal requirements pertaining to a permanent structure; (4) methods for preventing an abandonment and of enforcing the obligations of the lease in event of lessee's insolvency and means of determining the extent or nature of repairs; and (5) the character and financial responsibility of an assignee. Covenants bearing upon these and many other subjects must be agreed upon before it can be said that a contract for a 99-year lease has been made. But in this case in order to determine that the offer is not enforcible it is unnecessary to go further than paragraphs 8 and 9 to observe that the offer merely adumbrates the instrument contemplated. It is merely one step in the negotiations for a lease. The offer, which was addressed to a broker, indicates that the parties contemplated further study and conferences with reference to the terms of the lease. It cannot be said, therefore, that the parties contracted for a 99-year lease.

In support of its contention that the offer and its acceptance constitute a valid contract for a 99-year lease plaintiff relies largely upon *Levin* v. *Saroff,* 54 Cal.App. 285 [201 P. 961]. That decision is not authority here. Those parties acted upon a mutual construction of their agreement. Saroff had agreed in writing to lease from Levin at a definite rental for five years and was granted an option of renewal. On the very day of their contract Levin surrendered possession, made the repairs called for by the contract and Saroff took possession. He paid four months' rent in advance and subsequent rentals in advance as provided. After further negotiations for the formal lease, to the discredit of Levin he refused to execute a lease containing all of the provisions of their original memorandum and others which Levin himself had proposed. He was unsuccessful in his attempt to oust Saroff because the "agreement has been acted upon and the defendant has gone into the possession . . . such agreement was in full force and effect until superseded by a formal writing in accordance therewith." (p. 291.) The other authorities cited by plaintiff (*Magee* v. *Magee,* 174 Cal. 276 [162 P. 1023] ; *Mebius & Drescher Co.* v. *Mills,* 150 Cal. 229 [88 P. 917] ; *Fleishman* v. *Woods,* 135 Cal. 256 [67 P. 276] ; *Flickinger*

v. *Heck*, 187 Cal. 111 [200 P. 1045] ; *McCowen* v. *Pew*, 18 Cal. App. 302 [123 P. 191]) are readily distinguishable. The facts in none of them are similar to those alleged in the complaint before us. None is authority here.

The submission of the unsigned formal lease by defendants five days after the original offer does not serve to complete a contract for a 99-year lease. That act was likewise but another step in the negotiations. Not having been signed by the owner it was no more than so much conversation. It was ineffective as against the statute which requires that a lease of real property for a term exceeding one year must be subscribed by the owner (Civ. Code, § 1091; Code Civ. Proc., § 1971; *Harper* v. *Goldschmidt*, 156 Cal. 245 [104 P. 451, 134 Am.St.Rep. 124, 28 L.R.A.N.S. 689]).

The judgment is affirmed.

WILSON, J.— I concur in the judgment on the ground that neither Exhibit A nor Exhibit B referred to in the opinion of the Presiding Justice nor the two documents together constitute a valid agreement which may be enforced in an action for specific performance. (See *Harper* v. *Goldschmidt*, 156 Cal. 245, 256 et seq. [104 P. 451, 134 Am.St.Rep. 124, 28 L.R.A. N.S. 689].) I do not express any opinion as to whether either or both documents may form the basis of an action for damages for nonperformance.

McComb, J., concurred.