In re **CALIFORNIA EASTERN AIR-WAYS, Inc.**

No. 1462.

United States District Court
D. Delaware.
Jan. 16, 1951.

David F. Anderson (of Southerland, Berl & Potter), of Wilmington, Del., and George F. Mason, Jr. (of Coudert Brothers), of New York City, for California Eastern Airways, Inc.

Thomas Cooch (of Morford, Bennethum, Marvel & Cooch), of Wilmington, Del., for claimant, Great Lakes Airlines, Inc.

LEAHY, Chief Judge.

Claimant seeks as an expense of administration of the Debtor $7,000, representing alleged damages suffered by claimant as the result of breach of contract by Debtor. The claim was referred to Stewart Lynch, Esq. (Referee) as Special Master to conduct hearings upon the issue of the validity of the claim, and to report his findings of fact and conclusions of law. After hearing, a report of the Master was filed setting

forth his findings and conclusions. Claimant filed exceptions to findings of fact 13, 15, 16 and 17, and to conclusions of law 1, 2 and 3; and, in addition, challenges the authority of the Court to determine the claim by means of a summary proceeding in bankruptcy. Debtor moved this Court to adopt the findings of fact and conclusions of law of the Master as the Court's own, and to overrule all the objections.

No exceptions were filed by claimant to findings of fact 1 to 12, inclusive, 14 and 18, which facts may be summarized:

In October, 1948, claimant and Debtor commenced negotiations looking toward the leasing by Debtor to claimant of a DC-4 aircraft owned by Debtor. In November 1948, the terms of a proposed lease were discussed. A draft of· a lease was to be prepared and submitted to Great Lakes Airlines, Inc., claimant. Subsequent to the submission of the draft, negotiations continued by telephone and telegraph. The original draft submitted was not acceptable to Great Lakes Airlines. Further negotiations were required in order to arrive at terms acceptable to both parties. A new draft of lease was prepared and received by Great Lakes Airlines, Inc., on December 2, 1948. Upon receipt of the new draft of the proposed lease, claimant stated it was "ready to go through with it." Debtor then discussed with claimant certain changes that would be required in the draft as submitted. These changes related to the sub-lessee clause, the cancellation clause, and the provisions regarding the carriage of freight. Debtor's Caskey told claimant's Hermann that he believed these matters could be worked out at their next meeting and instructed Hermann to come to Oakland, California, ready to· sign the lease, and to bring his pilots to Oakland to be checked out by the California Eastern Airways' check pilot. He also requested Hermann to bring a check to Oakland, California, in the sum of $11,000, which was the amount of the payment due upon the execution of the lease. Two or three hours after this telephone call, Hermann again called Caskey in Oakland, and at that time Caskey informed him that word had· just been received from New York that the aircraft had been leased to another party and for this reason the Debtor would not be in a position to consummate a contract with Great Lakes Airlines, Inc.

■ 1. Before proceeding to a discussion of the merits of the claim, it is necessary to consider the procedural issue raised by claimant's exceptions 7, 8 and 9. At an early stage of these proceedings, claimant sought permission not to press its claim in these proceedings but to bring a plenary action against Debtor for breach of contract either in California or such other forum as it might select. Such leave was denied with reservation, however, that claimant might renew its application at any time in the future for good cause shown. Claimant does not contend that, on the basis of the record before the Master, the findings of fact are "clearly erroneous". However, claimant does contend if its claim had not been determined as it was in a summary proceeding but that if claimant is now permitted to bring suit in California or in some other forum by means of a plenary action, a jury, for example, might or could arrive at different inferences to be drawn from the same evidence as adduced before the Master, or, from additional evidence not brought out in the summary proceeding, upon the basis of which a finding of liability might result in claimant's favor. In the matter at bar, although there is an assumption the findings of the Master, on the record, are not "clearly erroneous", I have concluded, nevertheless, to examine the contentions of the claimant closely, for in passing on the claim Mr. Lynch was not in a formal sense acting as Referee—to which the substantial evidence rule may be said to apply—but rather as a Special Master. In taking exception to the Master's determination of the claim, claimant once more renews its application for leave to bring a plenary action as stated. Returning then to claimant's exceptions 7, 8 and 9, these question the authority of the Court to determine a claim against a debtor in possession, for a breach of contract allegedly made by the debtor pursuant to authority granted by the Bankruptcy Act.

■ In reorganization or arrangement proceedings, and to a more limited extent

in straight bankruptcy proceedings, a trustee or debtor in possession may be authorized to enter into contracts which are necessary or expedient for the administration of the estate of the debtor or bankrupt and a commitment thus made will constitute a priority claim as an expense of administration under the provisions of §§ 62, and 64 of the Bankruptcy Act.[1]

Since a contract commitment made by a trustee or debtor in possession constitutes an expense of administration, any claim against the trustee or debtor for a breach of such contract or by reason of any other matter arising out of such contract likewise constitutes an expense of administration, and the validity thereof must be determined in accordance with the provisions of §§ 2 and 62 of the Bankruptcy Act.[2]

Claimant recognized this principle when it filed its proof of claim here, since it included as part of its claim a prayer that such claim be allowed priority as an administrative expense.

The usual, in fact the traditional, method adopted by courts of bankruptcy in exercising the jurisdiction vested in it by § 2 and § 62 of the Bankruptcy Act, is by summary proceedings, for by this means the purposes of the Act can be properly fulfilled and the estates of bankrupts and debtors expeditiously administered. If this jurisdiction over the administration of the estate of a bankrupt or a debtor were surrendered by courts of bankruptcy, the result in many cases might well be utter confusion, since hundreds of issues which may arise in one single bankruptcy proceeding might each be tried in a separate forum, resulting in inconsistent determinations and interminable delays. For this reason, the courts of bankruptcy have been jealous to guard their jurisdiction and to retain full control and power over proceedings in

bankruptcy. United States Fidelity & Guaranty Co. v. Bray, 225 U.S. 205, 32 S.Ct. 620, 56 L.Ed. 1055. With respect to contracts made by trustees, debtors in possession and other officers of the bankruptcy court, the necessity of the court retaining exclusive jurisdiction over matters arising out of such contracts is even more pronounced than in the case of other matters arising during the administration of a bankrupt estate. The courts have therefore adopted an extreme position with respect to this and have ruled that a party contracting with an officer of the court in fact contracts with the court itself, and by such act subjects himself for the purposes of the contract to the summary jurisdiction of the court. In re Hollingsworth & Whitney Co., 1 Cir., 242 F. 753; Governor Clinton Co. v. Knott, 2 Cir., 120 F.2d 149; In re Gillespie Tire Co., D.C., 54 F.Supp. 336; In re Sobod, Inc., D.C., 25 F.Supp. 344.

The principles thus stated are applicable to the question here in issue. If claimant, as it alleges, entered into a contract with debtor, it thereby subjected itself to the summary jurisdiction of this Court for all purposes of such contract, and cannot now question the competency of this Court to dispose of a claim arising out of such contract through means of a summary proceeding. And, incident to this jurisdiction, the Court must also possess jurisdiction to determine the underlying issue of whether or not such a contract was in fact made. Thus possessing summary jurisdiction to determine in a summary proceeding all matters arising out of the alleged contract, it is beyond question the Court had full power to refer the matter to a Special Master, for the purpose of taking testimony with respect to the validity of the claim and reporting to the Court his find-

---

1. 11 U.S.C.A. §§ 102 and 104.

As one recognized authority has stated: "The Trustee, with court approval, may be obligated to make a new contract in the name of the estate, and this commitment like any obligation of the trustee— certificates of indebtedness, purchases on credit, and the like—will be a preferred administrative expense unless it is spe-

cifically provided to the contrary in the new agreement." Finletter, Law of Bankruptcy Reorganization, 233.

See, too, In re Wil-Low Cafeterias, Inc., 2 Cir., 111 F.2d 429; In re Avorn Dress Co., 2 Cir., 78 F.2d 681; In re Irving Electrical Supply Co., D.C., 41 F. Supp. 16.

2. 11 U.S.C.A. §§ 11 and 102.

ings of fact and conclusions of law with respect thereto.[3]

2. Moreover, claimant has waived its right to question the summary jurisdiction of the Bankruptcy Court. As previously noted, prior to filing its proof of claim, claimant petitioned this Court for leave to bring suit against the Debtor in the United States District Court for the Southern District of California; and by order such petition was denied without prejudice, however, to a renewal. Thereafter, claimant filed its proof of claim and the proceedings described were had. Claimant did not question the exercise by this Court of summary jurisdiction with respect to its claim. In a brief filed with the Master, subsequent to the hearing before him, claimant first objected to jurisdiction of this Court to determine the validity of its claim in a summary proceeding. This objection was renewed in the exceptions filed by claimant to the report of the Master.

A party entitled to have a claim against the estate of a bankrupt or debtor determined in a plenary action may waive such right by consenting either expressly or impliedly to the exercise by the Court of summary jurisdiction with respect thereto.[4] Claimant by its actions here in failing to take an appeal from the order denying its application for leave to sue Debtor in the United States District Court for the Southern District of California, in filing its proof of claim here and in taking part in the proceeding before the Special Master subsequent to the reference of the claim and in acquiescing in the procedures followed by this Court for the determination of the validity of its claim has impliedly, if not expressly, consented to the jurisdiction of this Court to determine the validity of the claim by means of a summary proceeding.

3. In any event, finding of fact 13 is adequately supported by the evidence submitted before the Master.

The evidence offered before him supports his finding the parties intended that before their agreement would be considered binding it was to be reduced to writing and signed by both parties. An examination of claimant's Exhibits 6–B and 11–A indicates the agreement contemplated by the parties contained numerous detailed and technical provisions which seriously affected the value of the agreement to one party or the other. Such an agreement could not be concluded readily until the provisions had been reduced to writing and their exact terms carefully studied by both parties. It is unreasonable to assume that without a writing the detailed terms of the contract could be remembered by either party for even a short time. For this reason it can be inferred from the agreement itself the parties contemplated the same should be reduced to writing and signed by both parties.

From the inception of the negotiations all points discussed by the parties were reduced to writing and submitted to both parties for further consideration. The testimony of claimant's own witnesses adequately supports finding of fact 13 to the effect both parties intended a written instrument be executed and no binding contract would exist until such written instrument was in fact signed.

4. A contract was never consummated between claimant and debtor because neither claimant nor debtor assented to the terms of agreement in the manner contemplated. All the negotiations between the parties occurred in California and accordingly will be governed by the law of California. The rule of that state is where the parties understand that before a contractual relationship shall exist, the terms of their contract are to be reduced to writing and signed by them, a binding or completed contract does not arise until a writing evidencing the terms of their agree-

3. Rule 53, Rules of Civil Procedure, 28 U.S.C.A.; General Order in Bankruptcy No. 37, following section 53.

4. Harris v. Avery Brundage Co., 305 U.S. 160, 59 S.Ct. 131, 83 L.Ed. 100; Susquehanna Chemical Corp. v. Products Bank & Trust Co., 3 Cir., 174 F.2d 783; Hyman v. McLendon, 4 Cir., 140 F.2d 76; Bagley v. Rowley, 6 Cir., 127 F.2d 139; In re Pennsylvania Coffee Co., D.C., 8 F. 2d 98; Peoples Nat. Bank v. Green, 4 Cir., 296 F. 294.

ment has been executed by the respective parties.[5] Also whether an informal agreement which according to the understanding of the parties is to be reduced to writing takes effect as a completed contract at once or only when a formal written contract is executed, depends upon the intention of the parties as construed from the facts in the particular case.[6]

The Master by finding of fact 13 has found the parties intended during the course of their negotiations that any agreement of a binding nature and effect would be reduced to writing and signed by both parties and, until such a written agreement was signed, there would be no binding agreement. Such intention is given effect and until the assent of the parties was expressed in the manner contemplated, no contract would arise.[7] Until the instant of the performance of the act or acts required to constitute final consent by both parties to an agreement, either party is at liberty to withdraw from negotiations and refuse to enter into a contract. No matter how long or protracted negotiations may have been, or what the expectations of either party with respect thereto may have been, until a contract is finally consummated there can be no breach thereof or recovery thereunder.[8] In the cited cases the negotiations of the parties had progressed to a point far beyond that of the negotiations in the in-

stant case; yet it was found that no contract existed between the parties. Claimant has failed to show any final assent to the terms of the proposed agreement by either claimant or Debtor and has therefore failed to prove that any contract existed between the parties.

The fact is claimant and Debtor never reached agreement with respect to all of the material terms of the proposed contract. Finding of fact 9 to which the claimant has not excepted, establishes at the time of the last conversations between Debtor and claimant, there still remained certain terms of the proposed contract as to which the Debtor and claimant had not yet reached agreement. While it appears both Debtor and claimant believed it would be possible for them to reach a common understanding with respect to these matters, it is clear both parties understood such mutual agreement would have to be reached before final assent and execution of the completed contract.[9]

"If the terms are left open to be settled in the future at conferences or negotiations between the parties, the minds of the parties have not fully met, and, until they have, no court may undertake to give effect to those stipulations that have been settled or to make an agreement for the parties respecting those matters that have been left unsettled." [10] Clearly, claimant and Debt-

5. Store Properties v. Neal, 72 Cal.App.2d 112, 164 P.2d 38; Gibson v. De La Salle Institute, 66 Cal.App.2d 609, 152 P.2d 774; Dexter v. Ankiewicz, 26 Cal.App. 2d 326, 79 P.2d 400, 403; Van Hoosen v. Briscoe, 85 Cal.App. 746, 259 P. 1115; Las Palmas, etc., Distillery v. Garrett & Co., 167 Cal. 397, 139 P. 1077; Mashier v. Mashier, Cal.App., 99 P.2d 562 (not otherwise reported); Spinney v. Downing, 108 Cal. 666, 41 P. 797. See also, Stoddard v. Goldenberg, 48 Cal.App.2d 319, 119 P.2d 800.
1 Williston Contracts (Rev.Ed.) § 28; 1 Restatement Contracts, § 26.

6. 17 C.J.S. Contracts, § 49, page 391; Gibson v. De La Salle Institute, supra; 1 Williston Contracts (Rev.Ed.), § 28.

7. Van Hoosen v. Briscoe, 85 Cal.App. 746, 259 P. 1115, 1116.

8. In 1 Williston Contracts (Rev.Ed.), § 27, p. 59, it is said: "The mere expecta-

tion that a contract will be entered into and the fact that negotiations have been made to carry that expectation into effect do not constitute a contract."

9. This Court has recognized and applied the rule of contract discussed here in Woldow v. Edgemoor Realty Co., CA 1020 (1950).*

* No opinion for publication.

10. American Merchant Marine Ins. Co. v. Letton, 2 Cir., 9 F.2d 799, 801, certiorari denied Letton v. American Merchant Marine Ins. Co., 271 U.S. 668, 46 S.Ct. 483, 70 L.Ed. 1142.
Dillingham v. Dahlgren, 52 Cal.App. 322, 198 P. 832, 835: "An agreement that parties will, in the future, make such contract as they may then agree upon amounts to nothing. An agreement to enter into negotiations and agree upon the terms of a contract, if they can, cannot be made the basis of a cause of action.

or in the matter at bar had not yet arrived at a final agreement as to all of the terms and conditions of the contract to be executed by them, and for this reason it is not possible for the Court to find that any contract in fact existed.

■ 5. Before concluding, it may be pointed out that claimant has failed, in any event, to prove recoverable damage. There can be no recovery from Debtor of amounts which claimant paid out when not legally liable to make such payments.

The only claim for damage is for expenses "paid out" by claimant in connection with the operation of two ticket agencies. Claimant admits it has not undertaken to prove damages by way of loss of profits because such losses were "very speculative".

■ The alleged expenses were for losses suffered through the failure of two ticket agencies. It does not appear claimant was interested in either of these ticket agencies, although there did exist an understanding between claimant and the New York agency that this agency would use its best efforts to sell the services of the claimant prior to selling the services of other airlines. The business of these agencies was continued for a month subsequent to the receipt by claimant of notice from Debtor that the aircraft which was the subject of lease negotiations would not be leased to claimant. It further appears the agencies did sell the tickets of other airlines and did receive commissions from such airlines. The agencies were, however, unsuccessful and were forced to close on December 31, 1948. Finding of fact 17, to the effect that "it does not appear from the testimony that the claimant owned or controlled, directly or indirectly" the ticket agencies is supported by the record. Claimant is not entitled to recover sums paid where there is no legal liability on the part of claimant to make such payments.[11]

Absent a showing claimant was legally liable to reimburse its stockholders for losses suffered as a result of the failure of the ticket agencies in which they invested, and a showing such amounts could not be recovered by claimant, no recovery of such amounts can be had by claimant from the Debtor.

Neither can there be recovery from Debtor of losses suffered by claimant as a result of the operation of independent business ventures. The General Manager of Debtor testified he did not know the ticket agencies referred to above had been established and it does not appear claimant notified Debtor either that the agencies had been established or that the establishment was contemplated. Moreover, as appears from findings of fact 15 and 16, the establishment of the ticket agencies in connection with the operation to be conducted with Debtor's aircraft was not within the contemplation of the parties when negotiating the contract. On the contrary, it appears from testimony that it is a common practice in the irregular aviation industry for independent ticket agencies to sell tickets of irregular air carriers and to receive a commission in return therefor. While it is common for these agencies to arrive at an understanding with one particular airline that it will attempt to sell the services of that airline before selling the services of other airlines, the agencies nevertheless are free to sell and do sell the services of several airlines. The only inference the Master could draw from the testimony was that the ticket agencies were established as separate enterprises having no connection with claimant other than a common form of agreement or understanding that claimant's services would be given

---

Where a final contract fails to express some matter, as, for instance, a time of payment, the law may imply the intention of the parties; but where a preliminary contract leaves certain terms to be agreed upon for the purpose of a final contract, there can be no implication of what the parties will agree upon."

11. "No recovery can be had for sums paid by plaintiff under a sense of moral obligation, where he was not legally liable therefor." 25 C.J.S., Damages, § 46, page 524; Sullivan v. Thompson, 30 Cal.App. 2d 675, 87 P.2d 62.

a preference by these agencies. The only other connection that has been shown is that certain of the stockholders of claimant were financially interested in the agencies.[12]

Clearly claimant is not entitled to recover amounts from Debtor on account of a loss suffered in the operation of the ticket agencies. The agencies, as stated, were separate enterprises, and while they may have been of use to claimant in connection with the operation of the aircraft to be leased from Debtor, Debtor cannot be charged with knowledge that losses therefrom would result to the claimant upon a breach of a contract to lease an aircraft. More than that, it appears the agencies were established prior to the date upon which claimant alleges to have consummated a contract with Debtor and could and did sell tickets for other airlines. No breach of contract by Debtor could be said to be the direct cause of the losses suffered by these agencies. Debtor, then, is not liable to claimant for losses thus suffered.

The report of Stewart Lynch, Esq., Special Master, as to the claim under review will be adopted; all exceptions thereto are overruled; and the prayer to modify the outstanding injunctive provisions against suit, as fixed by orders filed herein, so as to permit claimant to bring a plenary action in California or some other forum, will be denied.

12. "It is a well-settled rule that the damages that can be recovered for any breach of contract are only such as may reasonably be supposed to have been in the contemplation of the parties * * * as the probable result of a breach." California Press Mfg. Co. v. Stafford Packing Co., 192 Cal. 479, 483, 221 P. 345, 346, 32 A.L.R. 114; West Coast Winery, Inc., v. Golden West Wineries, Inc., 69 Cal. App.2d 166, 158 P.2d 623. See also Hunt Brothers Co. v. San Lorenzo Water Co., 150 Cal. 51, 87 P. 1093, 7 L.R.A.,N.S., 913; Lacy Mfg. Co. v. Gold Crown Mining Co., 52 Cal.App.2d 568, 126 P.2d 644.

"Parties when they enter into contracts, might well be presumed to contemplate the ordinary and natural incidents and consequences of performance or non-performance; but they are not supposed to know the condition of each other's affairs, nor to take into consideration any existing or contemplated transactions, not communicated nor known with other persons. Few persons would enter into contracts of any considerable extent as to subject matter or time if they should thereby incidentally assume the responsibility of carrying out, or be held legally affected by, other arrangements over which they have no control and the existence of which are unknown to them. In awarding damages for non-performance of an existing contract, the gains or profits of collateral enterprises in which the party claiming them has been induced to engage relying upon the performance of such a contract, and of which no notice has been given the other party cannot be included." 1 Southerland, Damages (4th Ed.), § 47, p. 182.